Priority Send ✓
Enter ✓
Closed ___
JS-5/JS-6 ✓
JS-2/JS-3 ___
Scan Only ___

ENTERED
CLERK, U.S. DISTRICT COURT
FEB 21 2007
CENTRAL DISTRICT OF CALIFORNIA
BY          DEPUTY

FILED - SOUTHERN DIVISION
CLERK, U.S. DISTRICT COURT
FEB 21 2007
CENTRAL DISTRICT OF CALIFORNIA
BY          DEPUTY

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANK ARMANNO, <br><br> Plaintiff(s), <br><br> v. <br><br> PURICLE, INC. and WAL-MART STORES, INC., <br><br> Defendant(s). | CASE NO. SA CV 06-0626 DOC (RNBx) <br><br> **O R D E R** GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT <br><br> THIS CONSTITUTES NOTICE OF ENTRY AS REQUIRED BY FRCP, RULE 77(d). |

Before Court is Defendants' Motion for Summary Judgment of Non-Infringement ("Motion"). After considering the moving, opposing and replying papers[1], and the oral arguments of the parties, the Court hereby GRANTS Defendants' Motion.

## I. INTRODUCTION

This case involves devices that dispense cleaning and deodorizing agents into conventional flush toilet bowls when the toilet is flushed. Plaintiff Frank Armanno filed this action on October

---

[1] As a preliminary matter, the parties make a number of objections to evidence submitted. To the extent the Court relies on that evidence in this Order, these objections are OVERRULED.

21, 2005, in the District of Maryland, asserting that Defendants Puricle, Inc. ("Puricle") and Wal-Mart Stores, Inc. make and/or sell a product that infringes and contributes to or induces the infringement of Armanno's United States Patent Number 5,745,928 (the "'928 Patent"). On June 1, 2006, the Maryland District Court granted Puricle's Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a), and transferred the case to the Central District of California.

The accused device, Puricle's "NeverScrub" toilet bowl cleaning system, is an apparatus installed in the tank of a conventional flush toilet between the toilet tank water inlet valve and the overflow tube. Armanno contends that Defendants' sales and offers for sale of the accused device infringe Claims 1 and 2 of the '928 Patent, in violation of 35 U.S.C. § 271. Defendants now move the Court for summary judgment of non-infringement.

## II. CLAIM INTERPRETATION

Patent infringement analysis involves two steps: (1) an interpretation of the asserted claims, and (2) a comparison of the claims to the accused device. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370, 116 S. Ct. 1384 (1996). Claim interpretation is a matter of law, *Markman*, 52 F.3d at 979, and is thus amenable to summary judgment, even though the analysis involves both issues of law and questions of fact. *Phonometrics Inc. v. N. Telecom Inc.*, 133 F.3d 1459, 1463-64 (Fed. Cir. 1998). Many courts, however, have chosen to hold a claim interpretation hearing, or *Markman* hearing, to facilitate the claim interpretation process. *See e.g., Ethicon Endo-Surgery, Inc. v. United States Surgical Corp.*, 93 F.3d 1572, 1577 (Fed. Cir. 1996).

Claim interpretation begins with the language of the claim. *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1324 (Fed. Cir. 2002). Terms in the claim are generally given the ordinary and customary meaning they would have to a person of ordinary skill in the art at the time of the invention. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (en banc). However, the terms must be read in the context of the entire patent. *Id.* at 1314. In interpreting the claims, the court focuses primarily on the intrinsic evidence of record, including the claims themselves, the specification, and if in evidence, the prosecution history. *Id.* at 1312-17.

Among the intrinsic evidence, the specification is always highly relevant to the claim construction analysis – it is the single best guide to the meaning of a disputed term, and is usually dispositive. *Id.* at 1315 (citing *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)). "The specification is, thus, the primary basis for construing the claims." *Id.* (quoting *Standard Oil Co. v. Am. Cyanamid Co.*, 774 F.2d 448, 452 (Fed. Cir. 1985)). In addition to the specification, the court will also consider the prosecution history, which consists of "the complete record" of the patent. *Id.* at 1317. However, because the prosecution history often lacks the clarity of the specification, it is less useful for claim interpretation purposes. *Id.*

The '928 Patent contains three claims, the first two of which form the basis of Armanno's assertion of infringement. In relevant part, Claim 1 describes a cleaning agent dispenser, inserted between a toilet's water inlet pipe and its bowl refill tube, "consisting of":

> a cylindrical container having a closed bottom and an open top,
>
> a removable cap for sealingly engaging the open top of said container,
>
> said cap having an inlet port and an outlet port,
>
> an inlet tube connected at one end to said secondary water outlet port,
>
> another end of said inlet tube passing through the inlet port of said cap
>
> and terminating proximate said closed bottom of said container,
>
> an outlet tube communicating at one end with said bowl refill tube,
>
> another end of said outlet tube passing through said outlet port and
>
> terminating proximate said cap, and
>
> a solid capsule of concentrated cleaning/deodorizing agent disposed at
>
> the bottom of said container.

'928 Patent 6:20-36. Claim 2 depends on Claim 1, and adds "wherein said inlet tube and said outlet tube are fabricated of a flexible material." *Id.* at 6:37-39.

At issue here are the locations of the "inlet tube" and "outlet tube" with respect to the patented device's "cylindrical container." Puricle submits that these claim limitations, and in fact all of the claim limitations of Claims 1 and 2, should be construed according to the plain language

of the patent specification in their "ordinary sense as understood by those of skill in the toilet bowl cleaning art."[2] Mot. 11:17-19. Armanno does not dispute this contention, and in fact offers no suggestion on the proper claim construction of the '928 Patent. Given no argument to the contrary, and seeing no reason to deviate from the specification's ordinary language, the Court thus construes the '928 Patent so as to limit that the inlet and outlet tubes must pass through the agent dispenser cap.

### III. SUMMARY JUDGMENT STANDARD

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

The Court must view the facts and draw inferences in the manner most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S. Ct. 993, 994 (1962); *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1161 (9th Cir. 1992). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial, but it need not disprove the other party's case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S. Ct. 2505, 2514 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25, 106 S. Ct. 2548, 2553-54 (1986). When the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out the absence of evidence of a genuine issue of material fact from the non-moving party. *Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 806-07 (Fed. Cir. 1999).

Once the moving party meets its burden, the "adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine

---

[2]Neither party presents extensive testimony interpreting these limitations from one who proffers to be "of skill in the toilet bowl cleaning art." The Court is confident, however, that it is capable based on its own experiences of discerning how such a person would understand the claims.

issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Fed. R. Civ. P. 56(e); *see also Anderson*, 477 U.S. at 248-49, 106 S. Ct. at 2510. Furthermore, a party cannot create a genuine issue of material fact simply by making assertions in its legal papers. There must be specific, admissible evidence identifying the basis for the dispute. *S.A. Empresa de Viacao Aerea Rio Grandense v. Walter Kidde & Co., Inc.*, 690 F.2d 1235, 1238 (9th Cir. 1980). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for [the opposing party]." *Anderson*, 477 U.S. at 252, 106 S. Ct. at 2512.

## IV. INFRINGEMENT

After interpreting the asserted claims to determine their meaning and scope, a court performing a literal infringement analysis must determine whether those claims read on the accused product. *Southwall Tech., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1575 (Fed. Cir. 1995). "To establish literal infringement, every limitation set forth in a claim must be found in an accused product, exactly." *Id.* Here, Armanno concedes that the NeverScrub device does not literally infringe on the '928 Patent, as its inlet and outlet tubes do not pass through the agent dispenser cap. He nonetheless maintains that the accused device infringes under the doctrine of equivalents.

Under the doctrine of equivalents, a patent holder is able to claim "those insubstantial alterations that were not captured in drafting the original patent claim but which could be created through trivial changes." *Festo v. Shoketsu Kinzoku Kogyo Kabushiki*, 535 U.S. 722, 730, 122 S. Ct. 1831 (2002). "Infringement under the doctrine of equivalents requires that the accused product contain each limitation of the claim or its equivalent." *AquaTex Indus. v. Techniche Solutions*, 419 F.3d 1374, 1382 (Fed. Cir. 2005) (citing *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 40, 117 S. Ct. 1040 (1997)). A particular element in the accused product is equivalent to a limitation in the claim if the differences between them are insubstantial. *Id.* The court's analysis focuses on whether the element in the accused product "performs substantially the same function in substantially the same way to obtain the same result as the claim limitation." *Id.* (quoting *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 608, 70 S. Ct. 854

1  (1950) (internal quotation omitted).

2  Defendants do not argue that the accused device's inlet and outlet tubes are not equivalent to those described in the '928 Patent, but instead argue that Armanno is not entitled to assert equivalence. This argument is rooted in the doctrine of prosecution history estoppel (formerly known as file wrapper estoppel).

## A.  The Doctrine of Prosecution History Estoppel

Prosecution history estoppel precludes a patentee from benefitting from the doctrine of equivalents over subject matter that the patent holder relinquished during prosecution in order to obtain allowance of the claim. *Mark I Marketing Corp. v. R.R. Donnelley & Sons Co.*, 66 F.3d 285, 291 (Fed. Cir. 1995) (citing *Zenith Lab, Inc. Bristol-Myers Squibb Co.*, 19 F.3d 1418, 1424 (Fed. Cir. 1994)). Once estoppel applies, there is no range of equivalents available to the patentee for the amended claim element. *Festo Corp.*, 535 U.S. at 740-41. It is important to note that not all amendments give rise to prosecution history estoppel. *See Andrew Corp. v. Gabriel Elec. Inc.*, 847 F.2d 819, 825 (Fed. Cir. 1988). But estoppel does apply to an amended claim element where the patentee, for any reason related to the requirements for patentability, enacted a narrowing amendment. *Festo Corp.*, 535 U.S. at 736. In such instances, prosecution history estoppel requires that claims be interpreted by reference to those "that have been cancelled or rejected." *Id.* at 734 (quoting *Schriber-Schroth Co. v. Cleveland Trust Co.*, 311 U.S. 211, 220, 61 S. Ct. 235 (1940)).

In other words, "[w]hen the patentee has chosen to narrow a claim, courts may presume the amended text was composed with awareness of [prosecution history estoppel] and that the territory surrendered is not an equivalent of the territory claimed." *Festo Corp.*, 535 U.S. at 741. Where the prosecution history is silent as to the motivation behind a narrowing amendment, a patentee seeking to obtain the benefit of equivalence therefore bears the burden of establishing a reason other than patentability for the amendment. *See Warner-Jenkinson*, 520 U.S. at 33. The patentee must be given the opportunity to rebut this presumption, but the patentee's argument must be based solely upon the public record. *Sextant Avionique, S.A. v. Analog Devices, Inc.* 172 F.3d 817, 828

1  (Fed. Cir. 1999); *Pioneer Magnetics, Inc. v. Micro Linear Corp.*, 330 F.3d 1352, 1356 (Fed. Cir.
2  2003) ("Only the public record of the patent prosecution, the prosecution history, can be a basis
3  for [a plaintiff's motivation to amend]."). The Court then decides, as a matter of law, whether the
4  proffered reason is sufficient to overcome prosecution history estoppel. *K-2 Corp. v. Salomon*
5  *S.A.*, 191 F.3d 1356, 1368-69 (Fed. Cir. 1999); *Warner-Jenkinson*, 520 U.S. at 33.

### B.  Prosecution History of the '928 Patent

The '928 Patent issued on May 5, 1998 and contains three claims, two of which depend on the patent's sole independent claim. Armanno originally filed for this patent on January 11, 1996, when the United States Patent and Trademark Office ("USPTO") assigned it Serial Number 08/548,239 (the "'239 Application"). The '239 Application contained five claims, one of which was independent and recited a conventional flush toilet including a "sealed agent chamber" with a removable cap and a "cap inlet line" and a "cap outlet line" that were "placed through the cap and sealed to the cap about its outside periphery." Decl. of Clark S. Stone Ex. B at 15-16. Armanno filed a Preliminary Amendment to the '239 Application, which added Claims 6 through 8. *Id.* at 21-23. Claim 6 was an independent claim, which consisted of a conventional flush toilet including a "sealed agent chamber" with an "inlet line" and an "outlet line" that were placed as follows:

> (b) An *inlet line placed through a wall* of said agent chamber and sealed to said agent chamber about the outside periphery of said inlet line in contact with said agent chamber,
>
> (c) An *outlet line placed through a wall* of said agent chamber and sealed to said agent chamber about the outside periphery of said outlet line in contact with said agent chamber

*Id.* (emphasis added).

The USPTO rejected all eight claims of the '239 Application on June 9, 1996. *Id.* at 24-31. Among other findings, the USPTO explained that all eight claims were indefinite and that "Claims 1-3 and 6-8 are rejected under 35 U.S.C. § 102(b) as being anticipated by [U.S. Patent No. 5,042,095 ("Schoepe")]." *Id.* at 26, 28. On September 11, 1996, Armanno responded to this

rejection with an amended application wherein he added Claims 9-14, amended Claim 6, and argued that Schoepe did not anticipate the '239 Application because "the storage chamber [of Schoepe] is not directly connected in series with the refill line, as is done in the present invention." *Id.* at 41-43, 45.

The USPTO was again unconvinced, and on October 31, 1996 it rejected all of the claims still pending in the '239 Application in a Final Office Action. *Id.* at 51-56. In particular, the USPTO again rejected Claim 6 as anticipated by Schoepe. *Id.* at 53. Following this rejection, Armanno abandoned the '239 Application, which the USPTO noted in mailing a Notice of Abandonment on May 27, 1997. *Id.* at 60.

Just prior to the abandonment of the '239 Application, on April 30, 1997, Armanno filed a File Wrapper Continuation Application, which the USPTO assigned Serial Number 08/841,590 (the "'590 Application"). *Id.* at 62-64. An amendment to the '590 Application cancelled all of Claims 1, 4-6, and 9-14 of the '239 Application, and added new claims numbered 15-17. *Id.* at 65-69. These new claims ultimately issued as Claims 1-3 of the '928 Patent.

### C.  Armanno is Estopped from Asserting Equivalence

In light of this prosecution history, Armanno is estopped from now asserting that the accused device's side wall inlet and outlet tubes are equivalent to those described in the '928 Patent, which must pass through the agent dispenser cap. Because the Court examines a patent's prosecution history as a whole in determining whether estoppel applies, the '928 Patent's relevant history includes not only the '590 Application, but also the parent '239 Application history. *See Jonsson v. Stanley Works*, 903 F.2d 812, 818 (Fed. Cir. 1990) (prosecution history of parent application is relevant to understanding scope of claims issuing in a continuation-in-part application). Specifically, Armanno's abandonment of the elements claimed in Claim 6 of the '239 Application now trigger estoppel.

In adding Claim 6 to the '239 Application by the Preliminary Agreement, Armanno expressly stated:

> The purpose of the addition of claims 6, 7, and 8 is to claim the

invention in broader terms. There is no need to restrict the inlet and outlet lines in their connection with the chamber to the chamber cap. These connections can be made directly to the chamber just as well.

Stone Decl. Ex. B at 23. The USPTO rejected this claim, at least in part because it was anticipated by Schoepe, which also discloses inlet and outlet lines made directly to any of the walls of the agent delivery chamber. Schoepe Patent 6:18-19, 6:42-44 (disclosing "walls forming a transfer chamber lying adjacent to said storage chamber, said transfer chamber having an inlet coupled to said refill water outlet and having an outlet coupled to said standpipe"). Armanno then proceeded to narrow the patent application so as to cancel Claim 6 and to distinguish it from Schoepe, which did not disclose a removable top cap, by adding a new claim explaining that the inlet and outlet tubes must pass through the agent's removable dispenser cap. This "narrowing amendment for a reason related to patentability raises a presumption of prosecution history estoppel that may be rebutted by the patentee on stated grounds." *Sulzer Textile A.G. v. Picanol N.V.*, 358 F.3d 1356, 1368 (Fed. Cir. 2004).

The Supreme Court has outlined three instances in which "the patentee can overcome the presumption that prosecution history estoppel bars a finding of equivalence":

> The equivalent may have been unforeseeable at the time of the application; the rationale underlying the amendment may bear no more than a tangential relation to the equivalent in question; or there may be some other reason suggesting that the patentee could not reasonably be expected to have described the insubstantial substitute in question.

*Festo Corp.*, 535 U.S. at 740-41. Armanno does not attempt to argue, let alone identify supporting evidence in the public record, that any of these three exceptional qualities here applies. Moreover, the first and third exceptions are plainly inapplicable, as Armanno did foresee and in fact did describe the disputed equivalent in Claim 6 of the '239 Application.

Instead, Armanno misconstrues the law in arguing that he is only estopped from reclaiming those equivalents he specifically surrendered, and that Defendants bear the burden of

demonstrating that this clear and deliberate surrender. To this effect, he relies on two cases. The first of these cases, *Pordy v. Land O' Lakes, Inc.*, 97 F. App'x 921 (Fed. Cir. 2004), is an unpublished case, prefaced with a notice that it "was issued as unpublished or nonprecedential and may not be cited as precedent." The second of these cases, *Hughes Aircraft Co. v. United States*, 717 F.2d 1351 (Fed. Cir. 1983), has been reversed in relevant part and is no longer legal precedent. *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 234 F.3d 558, 574 (Fed. Cir. 2000) ("Today, we revisit the question we first addressed in *Hughes* [] and come to a different conclusion as to the proper scope of equivalents that is available when prosecution history estoppel applies than we did in that case. We hold that prosecution history estoppel acts as a complete bar to the application of the doctrine of equivalents when an amendment has narrowed the scope of a claim for a reason related to patentability.").

Aside from the fact that these authorities upon which Armanno relies are not valid precedent, his legal argument is simply wrong. As the Court has already explained, a patentee seeking to obtain the benefit of equivalence bears the burden of establishing a reason other than patentability for a narrowing amendment. *See Warner-Jenkinson*, 520 U.S. at 33. Armanno cannot lift that burden, and accordingly, Defendants are entitled to summary judgment of non-infringement.

## V. DISPOSITION

For the reasons set forth above, Defendants' Motion is GRANTED.

IT IS SO ORDERED.

DATED: February 21, 2007

*/s/ David O. Carter*
DAVID O. CARTER
United States District Judge